DAVID E. McNALLY DEVELOP-
MENT CORPORATION, Re-
spondent,

v.

CITY OF WINONA, Appellant.

No. A03–1785.

Court of Appeals of Minnesota.

Sept. 21, 2004.

Gregory M. Spoo, Rochester, MN, for respondent.

Bruce A. Nelson, Assistant Winona City Attorney, Robertson, Blahnik & Nelson, Winona, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; HARTEN, Judge; and HALBROOKS, Judge.

## OPINION

MINGE, Judge.

Appellant city challenges the district court's judgment setting aside its assessment and ordering a reassessment of all property covered by the assessment roll. Although respondent's evidence as to cost and value is insufficient to rebut the presumption of the assessment's validity, we agree with the district court that the city did not comply with its ordinance in determining the gross developable area benefited by the improvement. Because that error affects the entire assessment roll, we affirm the district court's disapproval of the assessment roll and we remand to the city for reassessment not inconsistent with this opinion.

## FACTS

Respondent David E. McNally Development Corporation is a corporation, whose primary business is real-estate development. Respondent was the developer of Bluffview Subdivision, located within the boundaries of appellant City of Winona, and was the owner of four lots and one out lot within phase one of the subdivision. Three of its lots were subsequently sold on contracts for deed.

Respondent petitioned the city to extend and construct water and sewer lines for Bluffview Subdivision. On December 18, 2000, appellant enacted Ordinance 3481, providing that 80% of the cost of constructing the improvements to the benefited property would be assessed based on acres or square footage of the gross developable acres. When respondent requested an estimate, appellant's city engineer advised him that each lot would be assessed $938.52 for the trunk lines.

The total cost of sewer and water extensions was $570,291. Although smaller diameter lines would have adequately serviced the subdivision, the city installed a 24–inch sewer trunk line and a 16–inch water trunk line to accommodate potential future development in West Burns Valley, beyond the Bluffview Subdivision. On March 4, 2002, appellant assessed each lot in Bluffview Subdivision, including those of respondent, a total of $5,350.56. Respondent contested the assessment on April 2, 2002, arguing that the assessment exceeded the benefit to the property and that the assessment was not uniform on the same class of property.

At the district court proceeding, the city presented its assessment roll and its witnesses testified that the city deducted from the assessment both the added cost of the larger trunk lines installed to accommodate future growth and 20% of the cost of the construction, all as provided by Ordinance 3481. In spreading the assessments, the city determined that a total of 34.94 developable acres benefited from the water line extensions and 11.15 developable acres benefited from the sewer line. In making this determination, the city included in the assessment only property that could be connected to the trunk lines without further extensions.

The parties' experts offered different opinions on the property that would benefit from the extension of the trunk lines in the future. Respondent's expert witness testified that between 150 and 300 gross developable acres could be serviced by the water trunk line extension in the future and that between 900 and 1,800 gross developable acres could be serviced by the sewer trunk line extension. The city's expert witness testified that only 52 developable acres could be serviced by the water trunk line extension in the future and only 380 developable acres could be serviced by the sewer trunk line extension in the future. A third expert testified that the benefited areas were 165 gross developable acres for the water and 140 acres for the sewer trunk line extensions.

Ronald Jaastad, a certified real-estate appraiser, testified for the city that, in his opinion, the benefits of the sewer and water trunk line extensions exceeded the cost assessed by the city. David McNally, respondent's president and an experienced real-estate developer, agreed that the property received a special benefit but disagreed on the extent of the benefit. The district court found that McNally believed that the assessment exceeded the increase in value to the property, although McNally did not specify values to support this belief.

The district court concluded that McNally's testimony was competent, that it overcame the presumption established by the city's introduction of its assessment roll,

and that the assessment exceeded the benefits to the property. It further determined that appraiser Jaastad's testimony "lacked significant criteria that should have been used to establish substantial similarity between [respondent's] property and the comparison properties .... [and i]t is impossible to discern whether Mr. Jaastad's comparison properties are actually comparable to [respondent's]."

The district court further concluded that the assessment was not uniform on the same class of property because the city did not consider the benefit to the substantial acreage of property beyond Bluffview Subdivision. The court found that the city limited its consideration of the benefit from the project to the immediate area, rather than the increase in fair market value to the larger gross developable area required by Ordinance 3481, and that the city's calculation of benefiting acres was substantially less than that of all the experts. The court further found that this error was so significant that the entire assessment roll was invalid and that all affected properties should be reassessed. The city challenges the district court's findings and legal conclusions.

## ISSUES

1. Did the district court err in concluding that McNally's testimony rebutted the presumption that benefits exceeded the assessments created by the city's adoption of its assessment roll?

2. Did the district court err in determining that the city failed to properly consider the benefits to all gross developable acres of property in preparing the assessment roll?

3. Does the district court have authority to order a reassessment of property owned by persons who did not appeal the original assessment?

## ANALYSIS

■ "The cost of any improvement, or any part thereof, may be assessed upon property benefited by the improvement, based upon the benefits received ...." Minn.Stat. § 429.051 (2002). A municipality's power of assessment, however, is limited by three conditions: (1) the land must receive a special benefit from the improvement being constructed; (2) the assessment must be uniform upon the same class of property; and (3) the assessment may not exceed the special benefit. *Carlson–Lang Realty Co. v. City of Windom*, 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976). Appellant Winona's Ordinance 3481 states that

[e]ighty percent (80) of the costs for all trunk improvements for sanitary sewers, water mains, and storm sewers shall be prorated for assessment to the benefiting properties based either on the number of acres or square footage of the gross developable area. If the city determines that additional size ... is required for future extension, the City shall initially pay for the additional cost due to the oversizing.

*Id.*

### I.

■ Respondent challenged the assessment on two separate grounds: first, the benefit to its own lots; second, the area benefited. The first issue is whether the district court erred in determining that the assessments against respondent's lots exceeded the benefit of the water and sewer trunk line improvements. An assessment that exceeds the benefit constitutes a taking of property without fair compensation in violation of the Fourteenth Amendment. *See Carlson–Lang*, 307 Minn. at 370, 240 N.W.2d at 519. When the issue is whether there has been an unconstitutional taking, the district court cannot abro-

gate its duty by deferring to the taxing authority; rather, its decision must be based upon independent consideration of all the evidence. *Buettner v. City of St. Cloud*, 277 N.W.2d 199, 203 (Minn.1979). This court cannot upset this de novo review of the special assessment when the district court's determination is supported by the record as a whole. *Dosedel v. City of Ham Lake*, 414 N.W.2d 751, 756 (Minn. App.1987). Our scope of review is a careful examination of the record to determine whether the evidence fairly supports the district court's findings and whether those findings support its conclusions of law. *Id.*

 A city is presumed to have legally assessed its property until proven to the contrary, and the introduction of its assessment roll into evidence constitutes prima facie proof that the assessment does not exceed the special benefit. *Carlson–Lang*, 307 Minn. at 370, 240 N.W.2d at 519. The party appealing the assessment can overcome this presumption by introducing competent evidence that the assessment is actually greater than the benefit. *Id.* If the city then presents evidence that the amount of the assessment is equal to or less than the increase in the market value of the property, the district court must weigh the parties' evidence and make a factual determination. *Id.* at 370, 240 N.W.2d at 519–520.

 The city argues that the district court erred because it did not properly weigh the evidence at trial. It contends that the testimony of respondent's president was insufficient to overcome the presumption of validity created when the city presented its assessment roll. But the caselaw indicates that if the experience and background of the property owner warrants, the district court can give substantial weight to the property owner's testimony, that such testimony alone is sufficient to rebut the presumption created

by the approval of the assessment roll, and that expert testimony is not required. *E.H. Willmus Prop., Inc. v. Vill. of New Brighton*, 293 Minn. 356, 359–60, 199 N.W.2d 435, 437–38 (1972). A property owner can overcome the presumption created by the assessment roll by identifying the maximum benefit and testifying that the assessment exceeded the benefit. *Dosedel*, 414 N.W.2d at 756.

 In this case, the city adopted the assessment roll, thereby placing the burden on respondent to present sufficient evidence to rebut the presumption of validity of the assessment. The district court found the testimony of respondent's president sufficient to rebut that presumption. While McNally's testimony related to his general concerns with the city's assessment, at no point does he actually state his opinion, as the owner or as an experienced real-estate developer, that he believed that the assessment exceeded the benefit. The only statements come from an attorney that respondent "disputes" the "[city's] position that the value of the property has increased in an amount greater than the amount of the assessment." Allowing vague testimony and argument of counsel to overcome the presumption of validity created by the city's adoption of its assessment would render such presumption meaningless. Requiring a clear statement that the assessment exceeds the benefit does not place an overly exacting burden on a challenging party. We therefore conclude that the record in this case does not support the district court's conclusion that the assessments exceeded the benefits.

## II.

 The second issue we consider is whether the district court erred in determining that the city failed to recognize the entire area benefited by the improvements. Where the issue presented to the

district court is the regularity of the assessment process or other determinations within the municipality's discretion, such as what property is benefited and the prorated division of the cost, the district court should not upset the city's finding unless it is clearly erroneous. *Buettner*, 277 N.W.2d at 203. In these situations, we examine the record to determine whether the evidence as a whole fairly supports the findings of the district court and whether the findings support the court's conclusions of law and judgment. *Carlson-Lang*, 307 Minn. at 373, 240 N.W.2d at 521.

Although the law does not define how property is classified for assessment purposes, the municipality has an obligation to evaluate and determine the reach of the benefit from the improvement. Minn.Stat. § 429.051. In doing so, the municipality has substantial discretion as long as its decision is fair. Minnesota law states that the cost of the improvement may be assessed upon property benefited by the improvement "whether or not the property abuts on the improvement." *Id.* However, the municipality must evaluate the situation. In *Quality Homes, Inc. v. Vill. of New Brighton*, 289 Minn. 274, 281, 183 N.W.2d 555, 559–60 (1971), the supreme court rejected the village's assessment because it had not determined whether nonabutting property was benefited by potential access to the improvement. The court in *City of St. Paul v. Sanborn*, 176 Minn. 62, 66, 222 N.W. 522, 523 (1928), stated that "[o]f course it is not necessary that the sewer or improvement should abut the particular parcel in order to subject it to assessment for benefits, so long as some benefit by way of enhanced market value inures to it." Further, when determining what land receives a benefit, the market value may be calculated upon the best use of the land in the future, and present use, while a consideration, is not

dispositive. *Anderson v. City of Bemidji*, 295 N.W.2d 555, 560 (Minn.1980).

When the city assessed the property in the present case, it determined that only Bluffview Subdivision "immediately benefited" from the improvements and only included Bluffview lots in its assessment. The city excluded other property further up West Burns Valley because that land required further trunk extensions to hook up to the mains. The district court found that the city's determination was clearly erroneous because the evidence showed that a significant area of additional property beyond the subdivision was benefited. The court indicated that because part of that property in West Burns Valley was zoned as single-family residential, it was in the same class of property as Bluffview Subdivision.

On appeal, the city points out that the record also indicates that even though the more distant property in West Burns Valley was zoned for single-family residences, parts of that property were not platted and that it was unclear when, if ever, development might occur. The city also argues that it properly assessed only 80% of the cost of the project as limited to the size needed to serve Bluffview and that it reserved the option of assessing at a future date the cost of extending water and sewer trunk lines beyond Bluffview, plus the cost of oversizing the mains as built for Bluffview. The city claims that this was a reasonable policy determination, that it is authorized by Minn.Stat. § 429.051 (2002), and that the district court should not have reversed the city's decision.

We recognize that a city has broad discretion in classifying property. *See id.* To conclude that the city abuses its discretion if it does not place all property that is zoned residential in the same class for assessment purposes is difficult because zoning alone does not establish

whether land is similarly benefited by the public improvement. All of the West Burns Valley should not be in the same class merely because it is zoned the same as Bluffview Subdivision. Land that is in the process of actually being developed is different from undeveloped land for which there is not an identifiable development plan. The district court went too far in indicating that all of the property in West Burns Valley is of the same class of property merely because it is zoned the same as Bluffview Subdivision.

 Even if the district court overemphasized zoning, there remains the question of whether the benefit of the trunk line extension was properly allocated to property in West Burns Valley, whatever the class designation or zoning. As previously observed, the city has discretion to determine classes of property for assessment purposes. *See Buettner,* 277 N.W.2d at 203; *Quality Homes,* 289 Minn. at 285, 183 N.W.2d at 562. As long as the city provides a reasonable analysis as to how it exercised its discretion in allocating the benefits, that determination is for the city, not the courts. Still, benefited property must be identified and the assessment fairly prorated. *See Quality Homes,* 289 Minn. at 280–81, 183 N.W.2d at 559. Not only is this a statutory obligation, but in this case Winona city ordinances apply. The district court concluded that given the provisions of Winona Ordinance 3481 § 1(b), (c), the city failed to exercise its discretion in a reasonable fashion. Under that ordinance, the city was obligated to allocate 80% of the cost of the trunk extensions to the "gross developable area." In addition, the city is to pay the oversizing costs, and it is obliged to later assess 80% of that oversizing cost against the property benefited by the oversized line. Here, all

of the expert testimony indicated that the gross developable area benefited from the project was extensive. The city's expert ventured that 380 acres benefited from the sewer trunk line and 52 acres from the water trunk line. Respondent's expert testified that 900 acres benefited from the sewer main and 150 acres from the water trunk line. In constructing its assessment rolls, the city only included 11.15 acres as benefited by the sewer and 34.94 acres by the water trunk line.

The city did not determine the extent of the property that benefited from the construction of the smaller diameter trunk lines, as required by Ordinance 3481. The conclusion that the city reached in making the assessment was simply that Bluffview would pay the cost of the line as if constructed at a smaller diameter and that the outlying gross developable acreage would pay only the incremental cost of the larger diameter line. Other than a reference to proximity for connections, this conclusion was reached without any analysis. Under this approach, the city absorbed 20% of the cost of the line extension in each category and ignored any possible benefit to the extensive gross developable acreage from the basic construction cost of the smaller diameter line. This is inconsistent with the unanimous testimony of the expert witnesses, including the witness called on behalf of the city, regarding the benefited gross developable area and as a result inconsistent with Ordinance 3481 § 1(b), (c). We cannot assume that the benefit to the gross developable area beyond Bluffview is limited to the cost of oversizing the water and sewer trunk lines. We agree with the district court that the city did not comply with the requirements of its ordinance that it allocate the cost of the improvement to the gross developable area.[1]

---

1. We recognize that the city may pay part of the benefit and later assess that portion. *See*

## III.

The final issue is whether the district court exceeded its authority in vacating the assessment and ordering a reassessment of all property included in the assessment roll, even though respondent is the only property owner to appeal and only owns or has an identified interest in three lots. Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). Minn.Stat. § 429.081 (2002) states that "[w]ithin 30 days after the adoption of the assessment, any person aggrieved, who is not precluded by failure to object prior to or at the assessment hearing ... may appeal to the district court ...." Minn.Stat. § 429.061, subd. 2 (2002) provides that "[a]ll objections to the assessments not received at the assessment hearing ... are waived, unless the failure to object at the assessment hearing is due to a reasonable cause." We further note that Minn.Stat. § 429.081 states that "[t]he court shall either affirm the assessment or set it aside and order a reassessment as provided in section 429.071, subdivision 2." We recognize that Minn.Stat. § 429.071, subd. 2 (2002), provides that "[w]hen an assessment is, for any reason whatever, set aside by a court of competent jurisdiction as to any parcel or parcels of land ... the council may, upon notice and hearing ... make a reassessment or a new assessment as to such parcel or parcels."

The city argues that under these statutes, any property owner who did not object to an assessment waives any right to do so, and that the district court did not

have jurisdiction to vacate the assessment against such owners. Respondent, on the other hand, proposes that although an owner's failure to properly appeal an assessment precludes that particular owner from later objecting to his or her assessment, such failure does not preclude a district court from fully vacating an assessment roll that is flawed.

The crucial question is whether the objection and determination of the district court is particularized and unique to a specific lot, such as the amount of benefit, or if the objection and determination of the district court deals with the integrity or validity of the entire assessment roll. It is helpful to note that although property owners who do not timely object are estopped from claiming irregularities and technical defects in the assessment process, such owners may not be precluded from claiming fraud or that the assessment was performed in violation of the law. *See* 14 Eugene McQuillin, *The Law of Municipal Corporations* § 38.198 (3rd ed. 1998). "[D]elay [will not] preclude [property owners] from complaining of the legality of the assessment by reason of the manner in which the apportionment was made." *Id.* at § 38.199. And the waiver rules "do not apply to defects, imperfections and omissions rendering the assessment void." *Id.* at § 38.203.

We conclude that, when the error affects the validity of the entire assessment, the district court can order a reassessment of all property on the roll. In this case, the failure to properly determine the gross developable area benefited by

Minn.Stat. § 429.051. Ordinance 3481's provision that the city pay 20% of the cost of the trunk lines does not relieve the city from fairly allocating the other 80% to the entire gross developable area. Although the ordinance appears to go beyond the statutory

requirements by using the phrase "gross developable area," the ordinance still limits the allocation of costs to the "benefiting properties" and may be construed as not imposing a standard that goes beyond the statute.

the project and allocate the costs accordingly goes to the validity of the assessment roll. Therefore, the district court properly ordered reassessment.

## DECISION

Because respondent's president only testified in general terms, his testimony failed to rebut the presumption of validity created by the city's approval of its assessment roll. While the city is allowed discretion to determine categories of property benefited by improvements, under its ordinance, it must allocate the cost of the improvement to the gross developable acreage benefited. The district court did not abuse its discretion in determining that the city failed to comply with its ordinance in making this allocation. When considering a challenge to a city's assessment, the district court has authority to order a reassessment of all the property if the challenge involved the validity of an entire assessment. We remand this matter to the city for reassessment, in a manner not inconsistent with this opinion.

**Affirmed and remanded.**